**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-7034**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

HDEEL ABDELHADY,

*Plaintiff-Appellant*,

v.

GEORGE WASHINGTON UNIVERSITY; PMA MANAGEMENT
CORPORATION; ARAMARK SERVICES, INC.;
ARAMARK MANAGEMENT SERVICES LIMITED PARTNERSHIP,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:22-cv-1334-TNM
Before the Honorable Trevor N. McFadden

_____

**RESPONSE BRIEF OF DEFENDANT-APPELLEE
THE GEORGE WASHINGTON UNIVERSITY**

_____

Gerard J. Emig, Esq. #43778
Gleason, Flynn, Emig & McAfee, Chtd.
11 North Washington Street, Suite 400
Rockville, MD 20850
gemig@gleason-law.com
(301) 294-2110 (telephone)

*Counsel for Defendant-Appellee
The George Washington University*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and Amici.** All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for Plaintiff-Appellant.

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Defendant-Appellee the George Washington University states the following:

The George Washington University is a Congressionally chartered institution with no parent companies, subsidiaries or affiliates which have outstanding securities in the hands of the public.

**B. Ruling Under Review.** References to the rulings at issue appear in the Brief for Plaintiff-Appellant.

**C. Related Cases.** This case has been the subject of multiple appeals to this Court. In *Abdelhady v. George Washington University*, No. 23-7001, 2023 WL 7037632 (D.C. Cir. July 13, 2023), this Court dismissed Abdelhady's merits appeal for lack of jurisdiction.

In *Abdelhady v. George Washington University*, No. 22-7148, 89 F.4th 955 (D.C. Cir. 2024), this Court vacated and remanded the district court's order denying in part Abdelhady's motion to seal certain documents.

In *Abdelhady v. George Washington University*, No. 24-7090, Doc. # 2078798 (D.C. Cir. Oct. 28, 2024), this Court dismissed Abdelhady's second merits appeal for lack of jurisdiction.

Finally, *Abdelhady v. George Washington University*, No. 24-7090, remains pending with respect to Abdelhady's appeal from the district court's denial in part of her renewed motion to seal certain documents.

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

INTRODUCTION ................................................................................1

JURISDICTION..................................................................................3

STATEMENT OF THE ISSUES..............................................................3

STATUTES AND REGULATIONS..........................................................3

STATEMENT OF THE CASE.................................................................4

    A.    Abdelhady's Injury and Workers' Compensation Claim.....................4

    B.    This Litigation ........................................................................6

        1.    Abdelhady's Amended Complaint.............................................6

        2.    The University's Dispositive Motions.......................................8

        3.    Abdelhady's Responses .......................................................10

    C.    The District Court Grants Partial Summary Judgment And
        Dismisses All Remaining Counts........................................................11

    D.    Subsequent Proceedings ........................................................16

SUMMARY OF ARGUMENT ..............................................................18

ARGUMENT ...................................................................................20

I.    The Court Should Affirm Summary Judgment for the University
    Because the Act Provides the Exclusive Remedy for Abdelhady's
    Negligence Claim. ........................................................................20

    A.    Standard of Review ................................................................20

    B.    The Act Provides the Exclusive Remedy for Abdelhady's
        Negligence Claim. ...............................................................21

1.    The District Court Correctly Held that Abdelhady Elected the Act. ........................................................... 22

2.    The District Court Correctly Held that the Act Applies to Abdelhady's Injury. ................................. 25

C.    Abdelhady's Arguments Are Irrelevant and Incorrect. ....................... 28

II.    The Court Should Affirm Dismissal of All Remaining Claims Against the University ................................................................. 35

A.    The District Court Relied Solely on the Amended Complaint. .......... 36

B.    The District Court Did Not Err in Holding that Abdelhady Conceded Arguments She Did Not Address. ..................................... 38

CONCLUSION ..................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdelhady v. D.C. Dep't of Emp't Servs.*,
No. 20-AA-176 (D.C. Feb. 22, 2022) ................................................ 5, 6

*Abdelhady v. George Washington Univ.*,
89 F.4th 955 (D.C. Cir. 2024) ............................................................ 16

*Abdelhady v. George Washington Univ.*,
No. 23-7001, 2023 WL 7037632 (D.C. Cir. July 13, 2023) .............. 16

*Bentt v. D.C. Dep't of Emp't Servs.*,
979 A.2d 1226 (D.C. 2009) ........................................................... 25, 26

*Blue v. D.C. Pub. Schs.*,
764 F.3d 11 (D.C. Cir. 2014) .............................................................. 16

*Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,
630 F.3d 217 (D.C. Cir. 2011) ............................................................ 30

*Clark v. D.C. Dep't of Emp't Servs.*,
743 A.2d 722 (D.C. 2000) .................................................................. 23

*Doe 1 v. Apple Inc.*,
96 F.4th 403 (D.C. Cir. 2024) .............................................................. 4

*Frito-Lay, Inc. v. Willoughby*,
863 F.2d 1029 (D.C. Cir. 1988) ..................................................... 20, 32

*Galvin v. Eli Lilly Co.*,
488 F.3d 1026 (D.C. Cir. 2007) ..................................................... 20, 33

*Gant v. Lynne Experience Ltd.*,
325 A.3d 407 (D.C. 2024) .................................................................. 35

*Garrett v. Wash. Air Compressor Co.*,
466 A.2d 462 (D.C. 1983) .................................................................. 23

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*,
199 F.3d 1365 (D.C. Cir. 2000) .......................................................... 31

*Hahn v. Portfolio Servicing, Inc.*,
424 F. Supp. 3d 614 (N.D. Cal. 2020) ................................................ 31

*Harding v. Gray*,
9 F.3d 150 (D.C. Cir. 1993) ................................................................ 32

*Koslon v. D.C. Dep't of Emp't Servs.*,
699 A.2d 357 (D.C. 1997) .................................................................. 25

*Lockhart v. Coastal Int'l Sec., Inc.*,
  905 F. Supp. 2d 105 (D.D.C. 2012) ................................................................22

*Niles v. D.C. Dep't of Emp't Servs.*,
  217 A.3d 1098 (D.C. 2019) ................................................................26, 27

*Page v. Comey*,
  137 F.4th 806 (D.C. Cir. 2025) ................................................................36

*Payne v. D.C. Gov't*,
  722 F.3d 345 (D.C. Cir. 2013) ................................................................24

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ................................................................38

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib.*,
  647 F.2d 200 (D.C.Cir. 1981) ................................................................30

*Tekle v. Foot Traffic, Inc.*,
  699 A.2d 410 (D.C. 1997) ................................................................22

*U.S. ex rel. Totten v. Bombardier Corp.*,
  380 F.3d 488 (D.C. Cir. 2004) ................................................................24

*Wannall v. Honeywell, Inc.*,
  775 F.3d 425 (D.C. Cir. 2014) ................................................................38

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
  892 F.3d 332 (D.C. Cir. 2018) ................................................................39, 40

*Wye Oak Tech., Inc. v. Republic of Iraq*,
  2018 WL 5983385 (D.D.C. Nov. 14, 2018) ................................................................30

STATUTES

D.C. Code § 32-1503 ................................................................21

D.C. Code § 32-1504 ................................................................13, 21, 25, 29

D.C. Code § 32-1514 ................................................................25

D.C. Code § 32-1524 ................................................................25

D.C. Code § 32-1534 ................................................................7, 29, 32

RULES

Fed. R. Civ. P. 56(d) ................................................................10, 20

REGULATIONS

D.C. Mun. Regs. tit. 7, § 217 ................................................................8

**TREATISES**

6 Larson's Workers' Compensation Law § 100.012 (1999 ed.) ............................23

## GLOSSARY

| | |
|---|---|
| **The Act** | District of Columbia Workers' Compensation Act of 1979, D.C. Code §§ 32-1501-45 |
| **Abdelhady** | Plaintiff-Appellant Hdeel Abdelhady |
| **ALJ** | Administrative Law Judge |
| **Aramark** | Defendants Aramark Services, Inc. and Aramark Management Services Partnership Limited |
| **JA** | Joint Appendix |
| **JAS** | Sealed Joint Appendix |
| **The Office** | District of Columbia Office of Workers' Compensation |
| **PMA** | Defendant PMA Management Corporation |
| **The University** | Defendant the George Washington University |

## INTRODUCTION

Plaintiff Hdeel Abdelhady attempted to make a federal case out of a workers' compensation dispute.  The district court carefully and correctly rejected that attempt, concluding that the District of Columbia's Workers' Compensation Act (the "Act") provides the exclusive remedy for her negligence claim and dismissing her remaining counts for failure to state a claim.  This Court should affirm.

In May 2019, Abdelhady, an adjunct law professor at the George Washington University (the "University"), fell on a staircase after attending an adjunct appreciation lunch at the University.  She filed a workers' compensation claim and received some workers' compensation benefits.  But, dissatisfied with the amount she received, convinced the Administrative Law Judge ("ALJ") was biased against her, and aggrieved by alleged conduct of the University and Defendant PMA Management Corporation ("PMA") during the workers' compensation proceedings, Abdelhady purported to withdraw her claim.[1]  She then sued the University and other defendants in federal court, asserting claims ranging from negligence to RICO, and abuse of process to Section 1983.

In a thorough, 32-page opinion, Judge McFadden rejected all of her claims.  With respect to her negligence claim, the district court explained that Abdelhady

---

[1] This after the ALJ dismissed Abdelhady's application for a formal hearing on her workers' compensation claim without prejudice for Abdelhady's failure to abide by discovery orders.

"affirmatively applied for benefits under the [Act], and she then received and accepted workers' compensation benefits from [the University]." JA506. That election of remedies meant that the Act applied and foreclosed her attempt to sue. Alternatively, the court determined there was no genuine dispute that Abdelhady's "injury, which occurred at [the University] following a faculty event, falls with the [Act's] scope." JA507.

With respect to Abdelhady's remaining claims, the district court explained that her operative complaint (the "Amended Complaint") failed to plausibly allege one or more necessary elements for each claim. JA491-503. Indeed, Abdelhady implicitly conceded that the Amended Complaint was lacking with respect to certain claims by leaving the University's "persuasive arguments unaddressed." JA498.

On appeal, Abdelhady does not meaningfully address dispositive aspects of the district court's ruling. For example, she does not dispute that, as a matter of District of Columbia law, her election of workers' compensation remedies forecloses a later suit for negligence or that she in fact received some workers' compensation benefits. And she takes issue with the substance of the district court's motion to dismiss ruling is a single sentence and footnote, with no developed argument. *See* Br. 53 & n.13. Accordingly, this Court can affirm without wading into disputes about, for instance, the sham affidavit rule or the University's multi-decade status as a self-insured entity.

2

Regardless, Abdelhady does not identify any error, much less a reversable error, in the district court's judgment. That judgment should be affirmed.

## JURISDICTION

Abdelhady invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367. JA17. This Court has jurisdiction under 28 U.S.C. § 1291. On February 26, 2025, the district court granted Abdelhady's motion to voluntarily dismiss her last remaining claims with prejudice, resulting in a final judgment disposing of all of her claims against all parties. JA15. Abdelhady filed her notice of appeal on March 14, 2025. Dkt. 127.

## STATEMENT OF THE ISSUES

1. Whether the district court properly granted summary judgment in favor of the University on Abdelhady's negligence claim because the Act provides the exclusive remedy for that claim?

2. Whether the district court properly dismissed Abdelhady's remaining claims under Rule 12(b)(6) for failure to state a claim?

## STATUTES AND REGULATIONS

Relevant provisions of the District of Columbia Workers' Compensation Act of 1979, D.C. Code §§ 32-1501-45 and at Title 7, Chapter 2 of the District of Columbia Municipal Regulations (Private Sector Workers' Compensation) are set forth in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Abdelhady's Injury and Workers' Compensation Claim

This case arises from an injury Abdelhady sustained after an adjunct faculty appreciation luncheon at the University.  Abdelhady has been a part-time adjunct law professor at the University for many years. JA17-19.  In May 2019, she attended an "adjunct appreciation luncheon" on the University's campus.  JA19.  After the luncheon, she fell down a staircase in a University building, sustained injuries, and received treatment at the hospital.  JA19-21.[2]

Abdelhady "presumed" that the Act applied to her injury, JA33, and filed an incident report with the University's Office of Risk Management within a week of the incident, JA34.  She also "believed that th[e] incident would be considered an injury under the [Act]" and "filed a workers compensation claim."  JA42.  On June 3, 2019, the University and PMA (a third-party administrator) filed a "Notice of Controversion" with the Office of Worker's Compensation of the D.C. Department of Employment Services.  JA38.  That Notice contested Abdelhady's continuing disability and explained that medical documentation supporting continuing disability

---

[2] Because this appeal arises in large part from an order granting the University's motion to dismiss, the facts are generally described as they are alleged in the complaint.  *See Doe 1 v. Apple Inc.*, 96 F.4th 403, 414 (D.C. Cir. 2024).

payments had not been received. *Id.*[3]  After 45 days, the University and PMA paid

some "wage indemnification" to Abdelhady—although she alleges that she did not

receive all the workers' compensation benefits she should have.  JA39-40.  Abdel-

hady continued to receive workers' compensation payments from the University

through January 2020.  Dkt. 32-8, at 1-4.

Abdelhady's Amended Complaint alleges that the ALJ, the University, and

PMA engaged in various forms of purported misconduct during the course of her

workers' compensation proceedings.  *See, e.g.*, JA40-52.  For example, she alleges

that the ALJ "took actions and issued rulings that were inconsistent with clear law."

JA48.  She alleges that an attorney for the University and PMA offered to "help" the

ALJ "in her quest for a Maryland judgeship."  JA44.  And she alleges that the ALJ

"signed, issued, and sustained nine subpoenas for Ms. Abdelhady's medical records

and law firm records, in violation of District of Columbia law."  JA48.

Abdelhady moved to disqualify the ALJ and to destroy her medical records,

but the ALJ denied both motions.  *See Abdelhady v. D.C. Dep't of Emp't Servs.*, No.

20-AA-176, at *1 (D.C. Feb. 22, 2022), Dkt. 17-2.  The ALJ then dismissed without

prejudice Abdelhady's application for a formal hearing, concluding that she "had

---

[3] The University and PMA initially controverted Abdelhady's claims on the ground that it was not casually related to employment, JA39, but it subsequently withdrew that ground, *see* JA310.

not shown good cause for her failure to comply with the scheduling order and other orders related to discovery." *Id.* Abdelhady petitioned to the D.C. Court of Appeals for review of that order, which the court dismissed for failure to exhaust administrative remedies. *See id.* at 2. The Court of Appeals noted that Abdelhady could have filed an application for review of the ALJ's order with the Compensation Review Board and expressed no opinion on whether she had waited too long to do so. *Id.*

## B.    This Litigation

Instead of pursuing further administrative remedies, Abdelhady purportedly withdrew her workers' compensation claim and filed this lawsuit against the University, PMA, and Aramark Services, Inc. Dkt. 1. She later amended her complaint to add Aramark Management Services Limited Partnership. JA16-83.

### 1.    Abdelhady's Amended Complaint

Abdelhady's sprawling Amended Complaint asserts ten claims—ranging from negligence to civil RICO, and abuse of process to Section 1983—arising from her injury and workers' compensation proceedings. She alleges, for example, that the staircase on which she fell "was not up to code," JA20; that the University and PMA mishandled her workers' compensation claim, *e.g.*, JA35-38; that the University and PMA demanded "irrelevant" information, JA40; that they "act[ed] in concert with one or more" District of Columbia employees to "deprive[]" her "of the impartial, rulebound contested case required by federal and District of Columbia

6

law, and of honest services," JA47; and that she did not receive the full workers'

compensation benefits to which she was entitled, JA39.

Although Abdelhady's complaint concedes that she sought and obtained some

workers' compensation benefits, *see, e.g.*, JA34, 39, much of the complaint contends

that the University was not properly "self-insured" because it allegedly under-re-

ported payroll and loss information to the D.C. Office of Workers' Compensation

(the "Office"), *see* JA60-69.[4]

Pursuant to the Act, employers are required to procure insurance to cover

workers' compensation claims filed in the District of Columbia.  D.C. Code § 32-

1534(a).  An employer may elect, however, to satisfy this requirement "by furnishing

satisfactory proof to the Mayor of his financial ability to pay such compensation and

receiving an authorization from the Mayor to pay such compensation directly."  *Id.*

An employer that does so is "known as a self-insurer."  *Id.*

D.C. Mun. Regs. Tit. 7, §§217 *et. eq.* sets forth the process for an employer to

be deemed a self-insured employer by the Office.  Specifically, an employer must

submit "satisfactory proof to the Office" that it has met various requirements, in-

cluding that (a) the employer has sufficient financial resources to satisfy potential

---

[4] The University denies Abdelhady's allegations of underreporting any information
about payroll.  Abdelhady drew her erroneous conclusions from information relating
to several years, payroll relating to the University and a different entity, and reports
to different agencies with different reporting requirements.

liabilities arising under the Act; (b) the employer has adequate excess coverage; (c) the employer has made adequate arrangements to provide necessary compensation to its employees; and (d) the employer has deposited adequate security to Office in the amount requested by the Office.  D.C. Mun. Regs. tit. 7, § 217.

### 2.    The University's Dispositive Motions

The University moved to dismiss each of Abdelhady claims, arguing that the Act provides the exclusive remedy for all of Abdelhady's claims because they arose from her work-related injury or the administration of her workers' compensation claims and that she otherwise failed to state a claim upon which relief could be granted.  JA86-120.  In the alternative, the University simultaneously moved for summary judgment, submitting evidence confirming that it was self-insured when Abdelhady was injured.  JA121-166.

In support of its summary judgment motion, the University submitted an affidavit of Jefferson T. Smith, ARM, who explained that the University was "certified as a self-insured employer by the [D.C. Department of Employment Services] with effective dates of June 20, 2018 through June 30, 2019."  JA130.  In addition, the University submitted multiple documents demonstrating that it was self-insured at the relevant time.  One of those documents is a letter from Lisa Baxter, Associate Director of the Office of Workers' Compensation.  JA133.  Her letter stated:

Dear Mr. Smith:

This correspondence is to formally advise that the Office of Workers' Compensation (OWC) has completed its annual review of The George Washington University's self-insured status. Based on our review, The George Washington University has furnished satisfactory proof of its financial ability to meet any and all liabilities for workers' compensation indemnity and medical benefits. Accordingly, The George Washington University is approved to continue its status as a self-insured employer in the District of Columbia.

The effective period of your continuation is *June 30, 2018* to *June 30, 2019*. Your company will continue to assume liability for all work-related injuries or illnesses which may occur. The self-insured identification number within the OWC remains as *1071*. Please continue to use this number on all claims-related documents that are forwarded to this office and on general correspondences and reports.

Pursuant to the provisions of the D.C. Workers' Compensation Act of 1979, as amended, D.C. Code §32-1534 and in accordance with regulatory authority, The George Washington University is required to deposit an Indemnity Bond with the OWC. Based on the annual review, the bond amount will remain at its current level of **$800,000.00**. This acknowledges receipt of The George Washington University bond for the period of June 30, 2018 to June 30, 2019. In addition, we are also in receipt of a copy of your company's excess or catastrophic loss insurance policy.

John Freeman is assigned as the Insurance Examiner and will coordinate all reporting, assessment and collection processes with The George Washington University. During this continuation period of self-insured status, you may continue to communicate with Jeannette Williams, Program Analyst, for any questions or concerns pertaining to the self-insurance program. Mr. Freeman and Ms. Williams can be reached on 202-671-1000.

Sincerely,

Lisa Baxter
Associate Director

JA133.

    The University also produced the Certificate of Self-Insured Status issued by the Office covering the period of June 15, 2018 through June 30, 2019. JA136. And the University produced the insurance policy required by the Office. JA 137-165.

### 3.    Abdelhady's Responses

Abdelhady opposed the University's dispositive motions and filed an affidavit in opposition to the University's motion for summary judgment.  JAS1-7.  As relevant to this appeal, her summary judgment opposition disputed that she "was employed part-time by The George Washington University as a Professional Lecturer in Law and is so employed," taking the position that she "has been employed part-time in different periods in which she was actively teaching, and not continuously."  JA254.  And her affidavit asserted that "her employment status with" the University is "'terminated' outside of an academic semester."  JA509.[5]

Abdelhady also moved to strike Smith's affidavit, contending that Smith lacked personal knowledge and that the attached documents were not admissible.  JA275-277.

Notably, although Abdelhady's opposition to the University's motion for summary judgment included a cursory sentence asserting that the motion was "premature" because "no answer has been filed and no depositions or discovery have been taken," JA271 (citing Fed. R. Civ. P. 56(d)), she did not file an affidavit or declaration asserting that she could not present facts essential to justify her opposition under Rule 56(d).

---

[5] Out of an abundance of caution, the University quotes the district court's opinion on this point, rather than the sealed joint appendix.

### C.     The District Court Grants Partial Summary Judgment And Dismisses All Remaining Counts

On November 29, 2022, the district court issued a Memorandum Opinion and Order disposing of all of Abdelhady's claims against the University.  JA 482-517. The court noted that although Abdelhady was by that point proceeding *pro se*, she is a practicing member of the D.C. bar who was represented by counsel until briefing on the University's substantive motions had finished.  JA490-491.  Accordingly, the court explained, her "pleadings are not entitled to the special solicitude that courts ordinarily give to *pro se* parties."  JA491.

The district court dismissed all claims other than Count I (negligence) for failure to state a claim.  JA491.  With respect to Count II (RICO), the court agreed that the Amended Complaint did not allege "a 'pattern' of racketeering activity because all her allegations relate to a single alleged scheme to deprive her of asserted rights under the [Act]."  JA492.  Alternatively, the court held that Abdelhady lacked statutory standing because she had alleged only deprivation of workers' compensation benefits, not injury to her business or property—a point she conceded in any event by failing to respond to it in her opposition brief.  JA494-495.

With respect to Count III (negligent infliction of emotional distress), the court held that Abdelhady failed to allege the necessary "special relationship" or "undertaking" that could give rise to such a claim.  JA495-496.

11

The court next dismissed Abdelhady's fraud and fraudulent misrepresentations (Counts IV and V) as "conceded." JA498. The University argued that she did "not plead with particularity how she was influenced by, or relied on, Defendants' alleged misrepresentations," but Abdelhady's opposition "merely assert[ed] that '[t]he alleged facts of this case make clear as to what the claims for fraud were, when they were made, how they were made, and to who they were made.'" JA497 (second alteration in original). "She declined to materially address Defendants' Rule 9 arguments" and "chose to leave Defendants' persuasive arguments unaddressed." JA497-498.

With respect to Count VIII (tortious inducement of breach of fiduciary duty), the court dismissed both because Abdelhady "failed to allege facts suggesting that her medical providers breached any fiduciary duty" and because "she d[id] not plausibly allege damages caused by release of her medical information." JA498-500.

With respect to Count IX (abuse of process), the court reasoned that Abdelhady could not hold the University liable for using the "discovery mechanisms" provided under the Act—*i.e.*, obtaining subpoenas—"to assess the scope of the opposing party's claims." JA500. And although Abdelhady insisted that such discovery practices "violated HIPAA," the court noted that "HIPAA does not provide a private right of action." JA501.

And with respect to Count X (Section 1983), the court held that Abdelhady's theory that "Defendants conspired with the ALJ overseeing her compensation claim so Defendants would obtain favorable discovery rulings" failed to plausibly allege an agreement, a shared objective—or even "what that objective was." JA501-503.

At the same time, the district court granted the University summary judgment with respect to Count I (negligence), holding that the Act's exclusive remedy provision barred her from bringing this claim in federal court. JA503-516; *see* D.C. Code § 32-1504(b) ("[T]he compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer.").[6]

Starting with Abdelhady's own allegations, the court noted that her Amended Complaint "is littered with allegations that she suffered an injury compensable under the [Act]" and alleges that she was "'[a]t all times relevant to this action," "employed part-time by [the University.]" JA505 (second alteration in original). Moreover, "she affirmatively applied for workers' compensation benefits shortly after she was injured" and "there is no indication in the record that Abdelhady ever contested before [the D.C. Department of] Employment Services that her injuries arose out of her employment." *Id.*

---

[6] The district court did not need to address the University's argument that the Act barred Abdelhady's non-negligence claims, which arose from the administration of her workers' compensation claim, because it dismissed them for failure to state a claim.

Although Abdelhady protested that she was not acting within the scope of her employment, "[h]er successful pursuit of workers' compensation benefits forecloses this argument." JA506. Under D.C. law, the court explained, the Act can become applicable through "election." *Id.* And "Abdelhady affirmatively applied for benefits under the [Act], and she then received and accepted workers' compensation payments from [the University]." *Id.* The court rejected Abdelhady's argument that her workers' compensation benefits were "non-existent," pointing out that she collected payments "through January 2020" and "voluntarily withdrew her claim after *accepting*" benefits. JA506-507. Thus, "Abdelhady's successful election of benefits leaves no dispute that her injury is subject to the [Act]." JA507.

Alternatively, the court concluded there was no genuine dispute that Abdelhady's injury was covered by the Act. JA507-509. Applying D.C. law, the court reasoned that her injury arose out of her employment "because her teaching obligations were the but for cause of her fall." JA508. The court accepted her argument that she was not required to be at the luncheon, yet explained that "but for her teaching, she would not have been invited to the faculty appreciation luncheon and exposed to the risks of attendance." JA508-509. And the injury occurred in the course of her employment because "an adjunct professor" might "'reasonably be expected to be' at a faculty appreciation luncheon, and a faculty luncheon 'is reasonably incidental' to her employment obligations." JA509.

The court next turned to what it understood to be Abdelhady's argument that "despite applying for, receiving, and accepting workers' compensation benefits," she "was not employed at all by [the University] when she was injured." JA509. That argument, the court explained, could not be reconciled with her complaint or supported by an affidavit that directly contradicted prior representations (and was unsupported by the affidavit's exhibits). JA509-512. Accordingly, the court applied the "sham affidavit rule" in concluding that Abdelhady did "not raise a material issue about her employment status when she fell." JA512.

The court then rejected Abdelhady's arguments about the University's self-insured status as "patently frivolous." JA512. Smith's affidavit confirmed that the University has "been certified as a self-insured employer" since "1989," had "posted the required Indemnity Bond with the District," and "possessed a valid Certificate of Self-Insured Status when Abdelhady was injured." JA513. But the court did not need to "take Smith's word for it"; rather the letter from Lisa Baxer and other documents the University submitted showed that it "was a lawful self-insured employer." JA513-514. Moreover, Abdelhady had "not produced any evidence suggesting that [the University] fraudulently obtained insurance coverage," JA514, and, as noted, she did not file an affidavit or declaration under Rule 56(d).

Finally, the court denied Abdelhady's motion to strike, noting that Smith's explicit statement "that he has personal knowledge of all matters addressed in his

affidavit" satisfied Rule 56's low bar and finding "that the contents of Smith's affidavit" were capable of being converted into admissible evidence.  JA513 n.11.

### D.    Subsequent Proceedings

After the district court's November 2022 Order, Abdelhady filed multiple notices of appeal.  In July 2023, this Court dismissed Abdelhady's merits appeal from the November 2022 Order for lack of jurisdiction.  *Abdelhady v. George Washington Univ.*, No. 23-7001, 2023 WL 7037632 (D.C. Cir. July 13, 2023).  That Order did not resolve Abdelhady's claims against Aramark, and although Abdelhady had voluntarily dismissed those claims, she did so without prejudice, which meant that the November 2022 Order was not final.  *See id.* at *1 (citing *Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 17-18 (D.C. Cir. 2014)).

In January 2024, this Court vacated and remanded the district court's partial denial of her motion to seal certain documents.  *See Abdelhady v. George Washington Univ.*, 89 F.4th 955 (D.C. Cir. 2024).  This Court instructed the district court to consider all of the relevant factors and "further explain its decision."  *Id.* at 959.

On remand, the district court granted in part and denied in part Abdelhady's renewed motion to seal certain documents.  JA518-523.  That order is the subject of a separate appeal, No. 24-7090.  As relevant here, the district court explained that it would not seal "the entirety of [the University's] Motion to Dismiss," the University's "Reply to Plaintiff's Opposition to its Motion for Partial Summary Judgment,"

16

or its "Reply to Plaintiff's Opposition to its MTD." JA520. The court explained that it "expressly relied on them in ruling on [the University's] Motion to Dismiss," so "sealing these documents in their entirety would undercut the public's interest in ensuring the integrity of judicial proceedings." *Id.* (citation omitted). The court also declined to seal certain exhibits the University submitted in support of its summary judgment motion "[e]ven though the Court did not expressly rely on these exhibits in its published opinion." JA521.

In October 2024, this Court dismissed Abdelhady's second attempt to appeal the November 2022 Order. *See* No. 24-7090, Doc. # 2078798 (D.C. Cir. Oct. 28, 2024). This Court explained that the prior determination "that the order is not a final, appealable decision under 28 U.S.C. § 1291" was "the law of the case," and it rejected Abdelhady's other jurisdictional arguments. *Id.*

Finally, on February 26, 2025, Abdelhady moved to voluntarily dismiss her remaining claims against Aramark with prejudice. Dtk. 126. The district court granted her motion that same day, rendering the November 2022 Order final and appealable. JA15. This appeal followed.

In her brief, Abdelhady challenges various rulings relating to PMA and Aramark. Br. 30-31, 32-39, 55-56. The University takes no position on these arguments, which are not applicable to the University.

17

## SUMMARY OF ARGUMENT

The district court's Memorandum Opinion and Order should be affirmed.

The district court was correct in granting the University's motion for summary judgment as the uncontroverted record establishes that Abdelhady's injury falls within the scope of the Act, and there is no dispute that the Act provides the exclusive remedy with respect to such injuries.

The district court correctly held that the Act applies to Abdelhady's injury for two independent reasons. First, under D.C. law, the Act applies when an employee elects to pursue workers' compensation, and the undisputed evidence shows that Abdelhady sought and received workers' compensation benefits. Abdelhady does not challenge the district court's legal framework on appeal and argues only that she did not "successfully" receive benefits. But the Act itself provides a recourse for alleged underpayment of benefits. This Court can affirm summary judgment on this basis alone.

Second, the district court correctly held that the Act applies because Abdelhady's injury arose out of and in the course of her employment with the University. Again, Abdelhady does not dispute the legal framework the court applied or meaningfully challenge its application of that framework to the undisputed facts.

Instead, Abdelhady raises a series of irrelevant arguments that are meritless in any event. For example, Abdelhady insists that the University was not lawfully self-

18

insured within the meaning of the Act. Even if she were correct, it would make no difference because it would mean only that she had a choice between workers' compensation or a lawsuit—and she chose workers' compensation. But she is not correct. The summary judgment record, including a letter from the Office, confirms that the University was self-insured at the time of her injury. Abdelhady cannot create a genuine factual dispute by relying on unsubstantiated allegations in her Amended Complaint. Similarly, the district court correctly refused to credit Abdelhady's assertion that she was not employed by the University under the sham affidavit rule. But it also held that her affidavit would not create a fact issue even if the court considered it—a holding Abdelhady does not challenge on appeal.

The district court correctly dismissed Abdelhady's remaining counts because they failed to sufficiently allege one or more elements for each claim. Abdelhady does not challenge the substance of the district court's dismissal ruling. Instead, she asserts that the court converted the University's motion to dismiss into a summary judgment ruling. But it did not cite or rely on any material outside the four corners of her Amended Complaint. Abdelhady also contends that the district court abused its discretion in treating some issues as conceded under Local Rule 7(b). But the district court did not cite that Rule. And even if the court relied on it, it did not abuse its discretion in dismissing implausible claims when Abdelhady failed to respond to the University's persuasive arguments.

19

## ARGUMENT

**I.    The Court Should Affirm Summary Judgment for the University Because the Act Provides the Exclusive Remedy for Abdelhady's Negligence Claim.**

### A.    Standard of Review

Abdelhady correctly points out that this Court's review of summary judgment is *de novo* and that summary judgment should be granted if there are no genuine disputes as to any material fact.  Br. 40.  Abdelhady, omits, however, the requirements for the nonmoving party in opposing a motion for summary judgment.

First, the nonmoving party cannot defeat summary judgment simply by relying on the allegations of the complaint.  *See Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1033 (D.C. Cir. 1988).

Second, Rule 56(d) allows the nonmoving party to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Abdelhady did not file an affidavit or declaration showing that she could not present any essential facts.

Third, as this Court noted in *Galvin v. Eli Lilly & Co.*, "virtually every circuit has adopted a form of the so-called 'sham affidavit rule,' which precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the 'shifting party can offer persuasive reasons for believing the supposed correction' is more accurate than the prior testimony."  488 F.3d 1026, 1030 (D.C. 2007).

**B.    The Act Provides the Exclusive Remedy for Abdelhady's Negligence Claim.**

The district court correctly held that the Act bars Abdelhady's negligence claim.  All agree that, where the Act applies, it provides the exclusive remedy.  And the district court properly applied D.C. law in determining that the Act applies here for two independent reasons: First, it is undisputed that Abdelhady sought and received some workers' compensation benefits for her injury.  Second, Abdelhady's injury sustained after a faculty appreciation luncheon arose from and in the course of her employment as a University faculty member.

The Act applies to an "injury . . . of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury . . ., while in the District of Columbia."  D.C. Code § 32-1503(a)(1).  For covered injuries, the Act provides the exclusive remedy against employers and their insurers. Its plain, unambiguous terms state that the "liability of an employer prescribed in § 32-1503 shall be exclusive and in place of all liability of such employer to the employee" and that the "compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer."  *Id.* § 32-1504(a), (b).  Thus, the law is "clear that the [Act] is the exclusive remedy for work-related injuries, with the result that common law tort claims arising from such

21

injuries, such as claims for negligence, negligent or intentional infliction of emotional distress, and assault, are barred in civil actions." *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 117 (D.D.C. 2012).

Abdelhady has never disputed that the Act is exclusive and bars civil lawsuits where it applies. The dispositive question, therefore, is whether her injury falls within the scope of the Act. As the district court explained, there is no genuine dispute that it does, for at least two separate and independent reasons: Abdelhady elected to apply the Act by seeking and obtaining workers' compensation benefits, and even if she had not, her injury arose out of and in the course of her employment.

### 1. The District Court Correctly Held that Abdelhady Elected the Act.

Abdelhady affirmatively *elected* to apply the Act by seeking and obtaining benefits. JA506-507. As the district court explained, "'once a workmen's compensation act has become applicable either through compulsion *or election*, it affords the exclusive remedy for the injury by the employee or his dependents against the employer.'" JA506 (quoting *Tekle v. Foot Traffic, Inc.*, 699 A.2d 410, 412 (D.C. 1997)). Thus, "an employee is barred from bringing a common law tort action against his employer for injuries which *have been* or could be *compensated* under

the Act." *Garrett v. Wash. Air Compressor Co.*, 466 A.2d 462, 463 (D.C. 1983) (emphases added).[7]

It is undisputed that Abdelhady *sought* workers' compensation benefits. *See, e.g.*, JA42 ("Initially, Plaintiff believed that this incident would be considered an injury under the District of Columbia's Workers' Compensation Act, and she therefore filed a workers compensation claim."); Dkt. 32-1, at 1 (claiming benefits for "[f]all and collision in stairwell of GW Law School"). And it is undisputed that Abdelhady *received* workers' compensation benefits. *See, e.g.*, JA39 ("When [the University] and PMA finally got around to making partial payments, they underpaid wage indemnification only as to Ms. Abdelhady's . . . part-time earnings."); JA255 ("Plaintiff alleges that [the University] and PMA made a 'partial' payment after substantial delay of a portion of Plaintiff's . . . part-time earnings."); JAS4, ¶ 29; Dkt. 32-8, at 1-4 (Abdelhady collected workers' compensation payments from the University through January 2020).

Because "the most reliable" trigger of a workers' compensation act exclusivity provision "is the actual acceptance of compensation benefits," 6 Larson's Workers' Compensation Law § 100.012 (1999 ed.), and it is undisputed that Abdelhady

---

[7] As the district court noted, "*Garrett* interpreted the [Act's] predecessor, the Longshoremen's and Harbor Workers' Compensation Act," which "is similar to [the Act] in all relevant aspects." JA506 n.21 (quoting *Clark v. D.C. Dep't of Emp't Servs.*, 743 A.2d 722, 729 n.5 (D.C. 2000)).

accepted at least partial compensation benefits, the district court correctly held that her "successful election of benefits leaves no doubt that her injury is subject to the [Act]," JA507.

This ground alone is sufficient to affirm the district court's summary judgment holding, because Abdelhady does not offer any meaningful argument regarding election of benefits on appeal. *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived."); *Payne v. D.C. Gov't*, 722 F.3d 345, 354 (D.C. Cir. 2013) ("We have long held that this court does not normally consider points not asserted with sufficient precision to indicate distinctly the party's thesis." (citation omitted)). She does not dispute the legal principle the district court applied—that election of workers' compensation benefits renders the Act applicable. Nor does she dispute that she sought such benefits.

At most, Abdelhady insists that she did not *successfully* obtain all of the workers' compensation benefits to which she believed she was entitled. *See* Br. 47-48. But, even then, Abdelhady does not dispute that she received *some* benefits: she contends only that the University and PMA "paid *less than the legal minimum* wage indemnification and acted in September 2021 to increase plaintiff's medical costs by more than $10,000." *Id.* at 48. In other words, Abdelhady disputes whether the *amount* of her benefits was proper, not whether she *obtained* them.

24

The Act itself provides the recourse for such a dispute. For example, D.C. Code Ann. § 32-1515 provides for an assessment of 10% penalties for late payment of compensation. And D.C. Code Ann. § 32-1528 provides for penalties of payment of full wages in addition to compensation benefits if payments are withheld from an employee in bad faith. After the D.C. Court of Appeals dismissed her petition for review for failure to exhaust administrative remedies, Abdelhady could have continued to press her arguments in administrative proceedings.[8] But she cannot ignore those procedures for securing her "exclusive remedy," withdraw her workers' compensation claim after *accepting* benefits, and then file a civil lawsuit in federal court. D.C. Code § 32-1504(b).

### 2. The District Court Correctly Held that the Act Applies to Abdelhady's Injury.

Even if Abdelhady had not elected to apply the Act, the district court correctly held that the Act applies to "her injury, which occurred at [the University] following a faculty event." JA507-509. The district court properly applied the tests for arising out of and in the course of employment set forth in *Koslon v. D.C. Dep't of Emp't Servs.*, 699 A.2d 357, 359 (D.C. 1997), *Bentt v. D.C. Dep't of Emp't Servs.*, 979

---

[8] Indeed, she still could: Abdelhady timely filed her claim, and no compensation order has been issued. The applicable statutes of limitations under the Act for filing an initial claim (D.C. Code § 32-1514) and for modifying a compensation order (*id.* § 32-1524) do not bar her from complying with her discovery obligations and renewing her request for a formal hearing.

A.2d 1226, 1232 (D.C. 2009), and *Niles v. D.C. Dep't of Emp't Servs.*, 217 A.3d 1098, 1103 (D.C. 2019).

With respect to "arising out of," the district court accepted Abdelhady's position that her injury involved a "neutral" risk—*i.e.*, "risks having no particular employment or personal character." JA508. Under D.C. law, such risks are compensable under the Act when the injury "would not have happened *but for* the fact that conditions and obligations of the employment placed claimant in a position where [s]he was injured." *Bentt*, 979 A.2d at 1232 (citation omitted). And although the district court accepted Abdelhady's assertion that she was an "invitee" at the luncheon—*i.e.*, she was not contractually obligated to attend—that assertion made no difference. *See* JA508. As the court explained, "the question is not whether Abdelhady had to be at the luncheon," the question under D.C. law is "whether her injury would have happened 'but for' her teaching obligations." JA508.

On that question, the undisputed evidence confirms that the district court was correct: "but for her teaching, she would not have been invited to the faculty appreciation luncheon and exposed to the risks of attendance." JA509.

With respect to the "in the course of" requirement, D.C. law is clear that "[a]n injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be expected to be, and while the employee is reasonably fulfilling duties of the employee's employment or

doing something reasonably incidental thereto." *Niles*, 217 A.3d at 1103 (cleaned up). Again, the undisputed evidence confirms the district court's holding that an adjunct professor like Abdelhady "may reasonably be expected to be at a faculty appreciation luncheon, and a faculty luncheon is reasonably incidental to her employment obligations." JA509 (citation omitted).

Again, Abdelhady offers no meaningful argument relating to this legal analysis. She criticizes the district court for supposedly neglecting "substantive state law." Br. 42. But she does not cite a *single* case from the D.C. courts in the relevant section of her brief. *See id.* at 40-48. She does not contend that the district court applied the wrong legal framework. Nor does she challenge the court's legal conclusions that an injury occurring during her attendance at an adjunct faculty appreciation luncheon arose out of and in the course of employment as an adjunct faculty member.

Abdelhady appears to fault the district court for not addressing her status as an "invitee" at the luncheon. Br. 46. Yet she concedes, as she must, that the court *accepted* that "undisputed assertion." JA508. And she offers no legal support or argument to suggest that an employee's status as an invitee somehow creates and exception to the controlling "but for" test.

27

Abdelhady also insists that she "was not performing work for [the University] when injured," and cites her affidavit indicating she had completed her teaching duties before the date of the accident, was not paid for her time at the luncheon, and was not required to attend.  Br. 47 (citing JAS1-2, 8-16).  But she does not cite any case or legal authority suggesting that those facts are relevant to determining if her injury arose out of and in the course of employment.  And although she criticizes the district court for supposedly "contradict[ing] undisputed evidence" with respect to its "but for" finding, Br. 47, she does not cite any such evidence in the summary judgment record.

In short, Abdelhady offers no meaningful argument that the district court erred in concluding that she elected workers' compensation benefits and that her injury sustained at a faculty appreciation luncheon arose out of and in the course of her employment as a faculty member.  This Court could and should affirm the summary judgment ruling on either of these grounds.

### C.    Abdelhady's Arguments Are Irrelevant and Incorrect.

Abdelhady's brief focuses on arguments that make no difference with respect to the district court's judgment.  For example, she insists that the court erred in finding that she had filed a "sham" affidavit.  Br. 49-50.  But that holding was merely one alternative ground supporting the district court's conclusion that Abdelhady was employed by the University at the time of her injury for purposes of her workers'

28

compensation claim—a point she does not seriously dispute. And although she spills much ink protesting that the University was not "lawfully" self-insured, Br. 42-45, her undisputed election of workers' compensation benefits renders that issue entirely irrelevant. Regardless, Abdelhady's criticisms of the district court's opinion are uniformly meritless.

First, Abdelhady contends that the district court erred in determining that the University was self-insured. Br. 42-45. Even if she were correct, it would make no difference to this case. Under D.C. law, employers must "secure the payment of compensation" either by obtaining insurance or being self-insured "by furnishing satisfactory proof" of their "financial ability to pay such compensation." D.C. Code § 32-1534(a). If an employer "fails to secure payment of compensation," the injured employee has a choice: she "may elect to claim compensation under this chapter, or to maintain an action at law for damages." *Id.* § 32-1504(b). Abdelhady made her choice and elected to seek and obtain workers' compensation benefits. JA507-09. She does not cite any authority for the proposition that she can pursue *both* remedies, whether or not the University secured payment of compensation with the meaning of the Act.

Regardless, the district court properly characterized Abdelhady's self-insurance argument as "patently frivolous." JA512. The University submitted the uncontradicted Affidavit of Jefferson Smith—the University employee who oversees

the University's insurance program—asserting that the University complied with the Act's self-insurance requirements and was self-insured at the time of Abdelhady's injury.  JA130-131.  But the district court did not need to "take Smith's word for it," JA513, because the University also submitted documentary evidence, including a letter from the Office confirming that the University had "furnished satisfactory proof of its financial ability to meet any and all liabilities for workers' compensation indemnity and medical benefits" and was "approved to continue its status as a self-insured employer" at the time of Abdelhady's injury.  JA133.

Abdelhady renews her argument that the district court should have disregarded Smith's affidavit and the University's documentary evidence.  Br. 43-45.  But the court denied her motion to strike, JA513 n.11, and she does not come close to showing that it abused its discretion in doing do, *see Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (reviewing denial of motion to strike for abuse of discretion); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib.*, 647 F.2d 200, 201 (D.C.Cir. 1981) (per curiam) ("motions to strike, as a general rule, are disfavored").  For one thing, Smith's affidavit "explicitly state[d]" that it was "based on [his] personal knowledge," clearing "the low bar set forth in Rule 56's personal knowledge requirement."  *Wye Oak Tech., Inc. v. Republic of Iraq*, 2018 WL 5983385, at *8 (D.D.C. Nov. 14, 2018); *see* JA130.  Abdelhady

points out that Smith asked for "help" in determining when the University first obtained self-insured status, Br. 44, but does not cite any authority for the proposition that doing so somehow undermined Smith's personal knowledge that the University was self-insured in 2019. In any event, the district court relied on documentary evidence, not simply Smith's affidavit. *See* JA513.

And, with respect to those documents, it makes no difference whether they were "authenticated, certified, or admissible under Fed. R. Evid. 803 as a [University] business record." Br. 44. At summary judgment, parties are "not required to produce evidence in a *form* that would be admissible," the question is whether the evidence is "*capable* of being converted into admissible evidence." *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (second emphasis added). The district court found that it was, JA513 n.11, and Abdelhady offers no serious argument to the contrary.[9]

Ultimately, Abdelhady repeats her unsubstantiated allegations that the University misreported payroll, headcount, and loss experience data in obtaining self-

---

[9] Relying on a case from the U.S. District Court for the Northern District of California, Abdelhady says that the district court should not have relied on two of the documents because they were "materially redacted." Br. 44 (citing *Hahn v. Portfolio Servicing, Inc.*, 424 F. Supp. 3d 614 (N.D. Cal. 2020)). In *Hahn*, the court merely explained that it "could not consider information which was redacted and not provided to the Court in unredacted form" and thus did not "consider the redacted information to be part of the record." 424 F. Supp. 3d at 638. The University did not ask the district court here to rely on any redacted information.

insured status. Br. 43. The problem, as the district court recognized, is that "she has not produced any evidence suggesting that [the University] fraudulently obtained insurance coverage" and "'a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment.'" JA514 (omission in original) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). On appeal, Abdelhady points to the allegations of her Amended Complaint. *See* Br. 43. But a party cannot defeat summary judgment by relying on the allegations of the complaint. *See Frito-Lay, Inc.*, 863 F.2d at 1033.[10]

And even if Abdelhady had provided proper summary judgment evidence to substantiate her allegations that the University's reporting contained errors, it would make no difference. After all, D.C. law requires a self-insured employer to "furnish[] satisfactory proof to the Mayor of [its] financial ability." D.C. Code § 32-1534(a). The letter from Lisa Baxter, Associate Director of the Office, confirms that the University "furnished satisfactory proof of its financial ability to meet any and

---

[10] Abdelhady's brief also states that she "substantiated" her allegations that the University reported a different payroll in obtaining self-insurance than the payroll it reported in an "economic value" report. Br. 43. The portions of the sealed joint appendix she cites, however, say nothing about the economic value report, much less provide evidence suggesting that the reporting requirements were comparable. *See* JAS38, 42-46. Moreover, her affidavit indicates that much of the material she received through a FOIA request related to the GW Medical Faculty Associates, Inc., which Abdelhady characterizes as a subsidiary of the University. JAS5.

all liabilities for workers' compensation indemnity and medical benefits" and "approved" it "to continue its status as a self-insured employer" during the relevant time period. JA133. Abdelhady cites no authority whatsoever suggesting that the University must also furnish satisfactory proof *to her*.

Second, Abdelhady contends that the district court erred in applying the "sham" affidavit rule. Br. 49-50. That rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed correction is more accurate than the prior testimony." *Galvin*, 488 F.3d at 1030 (cleaned up).

Contrary to Abdelhady's representation, the district court did not exclude Abdelhady's entire affidavit and exhibits. Br. 49. Rather, the court applied the sham affidavit rule only in concluding her assertion "that 'her employment status with [the University] is "terminated"' outside of an academic semester" was "inadmissible." JA509-510. The court was entirely correct in doing so. Not only did Abdelhady allege that she "was an employee of [the University] on May 15, 2019," JA32, she also submitted an affidavit in the workers' compensation proceedings stating that she was "'employed part-time" at the University and had "so been employed continuously from approximately August 2004.'" JA510 (quoting Dkt. 32-13, ¶ 6). And the employee records she submitted in this case "indicate that her personnel status

was '*active*' on the date of her injury." JA511.  Thus, her affidavit did "not raise a material issue about her employment status when she fell." JA512.

Regardless, even if the district court erred in applying the sham affidavit rule, it would make no difference to this appeal because the court did not rely solely on that rule.  As the court explained, even if it "were to consider the portions of Abdelhady's affidavit asserting that she was not a [University] employee at the time of injury, the analysis would not change." JA512.  Even if considered, her "evidence" was "not significantly probative" or "sufficient to create a genuine dispute over her employment status." *Id.* (citation omitted).  The court would "not sanction her attempt to rewrite her employment history after she proceeded through the workers' compensation process, collected benefits under the [Act], and repeatedly represented under penalty of perjury that she was an employee." *Id.*

\*       \*       \*

In sum, the district court properly granted summary judgment to the University on Abdelhady's negligence claim because that claim falls within the scope of the Act and is subject to the Act's exclusive remedies provision.  Abdelhady offers no meaningful response to the district court's key legal analysis and holding that she elected benefits and, alternatively, that her injury arose from and occurred in the course of her employment.  Instead, Abdelhady raises a series of meritless objections, primarily to how the district court handled particular pieces of evidence.  But

even if those objections had merit, they would make no difference: under D.C. law, and employee cannot seek and obtain workers' compensation benefits and then turn around and sue her employer in federal court.[11]

This Court should ignore Abdelhady's cursory suggestion that the district court should have granted summary judgment to her, a request she did not make in the district court.  Br. 48.  Under D.C. law, an employee must first pursue workers' compensation—and thus allow the D.C. Department of Employment Services—"to make the initial decision concerning coverage" unless "the injuries were *clearly* not compensable under the statute."  *Gant v. Lynne Experience Ltd.*, 325 A.3d 407, 412 (D.C. 2024) (citation omitted).  Abdelhady did not and cannot come close to showing that her injuries were "clearly" not compensable under the Act.

## II.  The Court Should Affirm Dismissal of All Remaining Claims Against the University.

The district court meticulously considered Abdelhady's remaining claims and concluded that each failed to state a claim on which relief could be granted—several on multiple, independent grounds.  JA491-503.  On appeal, Abdelhady does not challenge the substance of any of those rulings.  She does not argue that the district

---

[11] The University argued in its dispositive motions in the district court that the Act bars all of Abdelhady's claims because the arose from the administration of her workers' compensation claim.  The district court dismissed those claims without reaching the merits of that argument.  If this Court concludes that the district court erred in dismissing any of those claim, it should remand for the district court to consider the University's exclusivity argument in the first instance.

court applied erroneous legal principles on any specific claim or point to any well-pleaded allegations filling in the gaps the district court identified.  Instead, she contends that the district court improperly relied on materials outside the pleadings, Br. 51-54, and erred in stating that she "conceded" certain issues by failing to address the University's arguments in favor of dismissal, Br. 54-55.  Both arguments are meritless.

## A.    The District Court Relied Solely on the Amended Complaint.

A careful review of the Memorandum Opinion establishes that the district court dismissed all counts other than negligence based solely on the inadequate allegations in the Amended Complaint without reference to *any* materials outside of the Amended Complaint.  JA491-503.  The University's motion to dismiss likewise relied entirely on the allegations of the Amended Complaint in challenging the legal sufficiency of all counts other than negligence.  JA86-120.  In support of its motion to dismiss, the University submitted one exhibit, a ruling from the D.C. Court of Appeals subject to judicial notice.  *See* Dkt. 17-2.[12]  Indeed, the University filed a companion motion for summary judgment to allow the district court to address its

---

[12] A court may consider those portions of "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss."  *Page v. Comey*, 137 F.4th 806, 814 (D.C. Cir. 2025) (citation omitted).  A court may also consider "matters of which it may take judicial notice."  *Id.* (citation omitted).  There is no dispute that the district court could properly take judicial notice of another court's decision that confirms Abdelhady filed a workers' compensation claim.

immunity under the Act in case the court decided that it needed to go beyond the four corners of the Amended Complaint.  JA121-166.

Abdelhady does not and cannot cite any portion of the district court's Memorandum Opinion or the University's motion to dismiss in support of her assertion that the court converted that motion into a summary judgment motion.  *See* Br. 51-54.  Instead, Abdelhady cites the district court's May 2024 order resolving her renewed motion to seal certain documents.  *See id.* at 53 (citing JA520).  But her brief simply mischaracterizes that order.  In the portion she cites, the district court explained that it would not seal specific *briefs—i.e.*, the University's motion to dismiss, reply in support of its motion for summary judgment, and reply in support of its motion to dismiss—because it "expressly relied on them in ruling on [the University's] Motion to Dismiss."  JA520.  "Given the Court's reliance on [the University's] *briefing*, sealing these documents in their entirety would undercut the public's interest in ensuring the integrity of judicial proceedings."  *Id.* (emphasis added; citation omitted).

The district court addressed certain of the University's "exhibits" separately.  JA520.  There, it explained that it "did *not* expressly rely on these exhibits in its published opinion."  JA521 (emphasis added).  In other words, the very portion of the remand order that Abdelhady cites confirms that the district court did *not* rely on

37

materials outside the Amended Complaint in dismissing her claims and was not re-
quired to convert the University's motion to dismiss into a summary judgment mo-
tion.

**B.    The District Court Did Not Err in Holding that Abdelhady
Conceded Arguments She Did Not Address.**

Finally, Abdelhady's argument that the district court improperly treated cer-
tain claims as "conceded" under Local Rule 7(b), Br. 54-55, fails for multiple rea-
sons.

As an initial matter, the district court did not cite Local Rule 7(b).  *See* JA494,
497.  One of the cases the district court cited, *Wannall v. Honeywell, Inc*., held that
the district court had not abused its discretion in treating an "unaddressed argument[]
as conceded" under that Rule.  775 F.3d 425, 428 (D.C. Cir. 2014).  The other case,
however, stands for the well-established general proposition that "[i]t is not enough
merely to mention a possible argument in the most skeletal way, leaving the court to
do counsel's work, create the ossature for the argument, and put flesh on its bones."
*Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).  "Judges are not
expected to be mindreaders.  Consequently, a litigant has an obligation to spell out
its arguments squarely and distinctly, or else forever hold its peace."  *Id.*

Either way, the district court did not abuse its discretion in holding that Ab-
delhady failed to sufficiently respond to the University's arguments.  In response to
the University's argument that she lacked statutory standing to bring a RICO claim

because she did not allege injury to business or property, Abdelhady offered a one-paragraph response, cited no authority, and merely described the argument as "immaterial" and "a strawman argument" designed "to misdirect the Court at [sic] the actual claims involved in this matter." JA235. And in response to the University's argument that she had not satisfied the heightened standard for pleading her fraud claims, Abdelhady offered a single sentence: "The alleged facts of this case make clear as to what the claims for fraud were, when they were made, how they were made, and to whom they were made." JA237. Notably, even that sentence conspicuously failed to mention reliance, much less respond to the University's argument that she failed to "plead with particularity how she was influenced by, or relied on, Defendants' alleged misrepresentations." JA497.[13]

Abdelhady's reliance on *Washington Alliance of Technology Workers v. United States Department of Homeland Security*, 892 F.3d 332, 344 (D.C. Cir. 2018), is misplaced. Br. 54-55. There, this Court held that the district court abused its discretion in treating a "plausible" claim for relief as conceded. *Id.* at 344. And

---

[13] On appeal, Abdelhady points to other portions of her opposition related to "fraud and racketeering predicate acts." Br. 55. But that portion of her opposition asserted that the University "misrepresented material facts in order to gain an insurance policy for the purposes of claiming self-insured status." JA228. It does not address how *Abdelhady* might have relied on such statements.

the plaintiff there "was not silent when confronted with the argument that its allegations fell short." *Id.* at 345. Thus, because the "complaint in fact stated a plausible claim for relief" and the timely opposition brief "indicated that [the plaintiff] adhered to its position that its complaint was well-pleaded," the district court abused its discretion in "kicking [the plaintiff] out of court under Local Rule 7(b)." *Id.*

Here, by contrast, the Amended Complaint does not plausibly allege that Abdelhady suffered an injury to her business or property and does not plead reliance plausibly, much less with the particularity required by Rule 9(b). Indeed, Abdelhady has *never* addressed why her RICO count was sufficient absent a claim of damage to property or why her fraud counts were pleaded with sufficient detail including how she was induced by the University to do anything to her detriment. Her opposition, like her brief on appeal, is silent on the merits of those issues. Thus, the district court would not have abused its discretion in treating them as conceded under Local Rule 7(b) or holding that Abdelhady forfeited those issues by failing to meaningfully address them in her opposition brief.

Finally, the district court offered multiple, independent grounds for dismissing Abdelhady's RICO claim. *See* JA491-495. Any one of those grounds would be sufficient for affirmance, since Abdelhady's brief leaves them entirely unaddressed.

## CONCLUSION

The district court's rulings should be affirmed in their entirety.

September 2, 2025                           Respectfully submitted,

                                  */s/ Gerard J. Emig*_____
                                  Gerard J. Emig, Esq. #43778
                                  11 North Washington Street, Suite 400
                                  Rockville, MD  20850
                                  gemig@gleason-law.com
                                  (301) 294-2110 (telephone)
                                  (301) 294-0737 (facsimile)

                                  *Counsel for Defendant-Appellee*
                                  *The George Washington University*

41

## CERTIFICATE OF COMPLIANCE

The brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and D.C. Cir. R. 28(c) because this brief contains 9,224 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Gerard J. Emig*
Gerard J. Emig, Esq. #43778

*Counsel for Defendant-Appellee*
*The George Washington University*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September 2025, a copy of the foregoing Brief was served electronically on:

Hdeel Abdelhady, Esq.
*Pro Se*
1717 Pennsylvania Ave., NW #1025
Washington, D.C. 20006
habdelhady@mapopllc.com
*Appellant*

Samuel Joseph DeBlasis, II
DeCaro, Doran, Siciliano, Gallagher
& DeBlasis, LLP
17251 Melford Blvd., Suite 200

Bowie, MD  20715
*Attorney for PMA Management*

Robert P. Scanlon, Esq.
Anderson & Quinn, LLC
Adams Law Center
25 Wood Lane
Rockville, MD 20850
*Attorney for Aramark Services, Inc. and*
*Aramark Management Services Limited Partnership*


*/s/ Gerard J. Emig*
Gerard J. Emig, Esq.

**ADDENDUM**

**(STATUTES AND REGULATIONS)**

7 DCMR § 217

D.C. Mun. Regs. Tit. 7, § 217

217. SELF-INSURANCE

217.1 An employer who desires to be a self-insurer may apply for authorization in accordance with this section and in the manner prescribed by the Office.

217.2 Under § 35(a)(2) of the Act [§ 36-334(a)(2), D.C. Code, 1981 ed.], any employer who desires to be a self-insurer shall furnish satisfactory proof to the Office that he or she has met the following requirements:

  (a) Secured or has sufficient financial resources to meet all obligations in regard to its potential liability under the Act;

  (b) Obtained adequate excess or catastrophic loss insurance or has otherwise made adequate financial arrangements for the losses:

  (c) Made adequate arrangements to provide promptly to its employees all necessary compensation and medical care required by the Act;

  (d) Made a deposit of security (negotiable securities, surety bond or other financial bond) in the amount and form prescribed by the Office; and

  (e) Agreed to carry out all requirements of the Act and this chapter.

217.3 An employer who applies for the status of self-insurer shall secure the insurance coverage required by the Act until such time as authorization is issued by the Office.

217.4 Application for self-insurance shall be made in a manner prescribed by the Office and shall contain at least the following information:

  (a) A statement of the amount of the employer's payroll for the preceding twelve (12) month period;

  (b) A statement of the average number of employees engaged in employment within the purview of the Act, or similar provisions of prior law, in the preceding twelve (12) month period;

  (c) A statement of the number and kinds of injuries to employees resulting in disability of more than three (3) days' duration, or in death, during each of the preceding three (3) years;

2

(d) An itemized statement of the assets and liabilities of the employer;

(e) A statement describing the facilities maintained or the arrangements made for the medical and hospital care of injured employees;

(f) A statement describing the provisions and maximum amount of any excess or catastrophic insurance;

(g) Signature of the applicant over the typewritten name, and if the applicant is not an individual, signature of a duly authorized officer indicating official title;

(h) Sworn oath of the applicant and, where appropriate, the corporate seal of the applicant; and

(i) A statement pertaining to the proposed processing of claims. If claims are proposed to be processed "in house", a statement shall be submitted showing the qualifications of those individuals who will process claims. If a self-insured service organization is to be used, a profile of the organization shall be submitted showing its experience in the administration of claims in general and specifically under workers' compensation laws, both state and federal.

217.5 The application shall be filed with the Office at the time and place and in the manner prescribed by the Office.

217.6 In addition to the application requirements set forth in § 217.4, the Office may require an applicant for self-insurance status to submit further financial or other information as it deems necessary.

217.7 In evaluating the ability of an employer to be a self-insurer, including the amount and form of any security to be deposited with the Office, the Office shall consider the following:

(a) The financial standing of the employer;

(b) The nature of the work in which the employer is engaged;

(c) The degree of hazard to which employees are exposed;

(d) The amount of the employer's payroll;

(e) The provisions for excess insurance against catastrophic loss; and

(f) Any other data submitted by the applicant or required by the Office.

217.8 Annually and at any other time as the Office may require or prescribe, each

self-insurer shall submit each of the following reports:

(a) A sworn itemized statement of the self-insurer's assets and liabilities, or a balance sheet;

(b) A sworn statement showing by classifications the payroll of employees of the self-insurer who are engaged in employment within the purview of the Act or similar provisions of prior law; and

(c) A sworn statement covering the preceding twelve (12) month period, listing all death and injury cases which have occurred during the period, together with a report of the status of all outstanding claims.

217.9 Whenever it is deemed necessary, the Office may, after reasonable notice, inspect or examine the books of account, records, and other papers of a self-insurer at the self-insurer's place of business for the purpose of verifying any financial statement submitted to the Office by the self-insurer or verifying any other information furnished to the Office in any report required by the Act or this chapter.

217.10. Each self-insurer shall permit the Office or its duly authorized representative to make an inspection or examination as the Office shall require. In lieu of this requirement the Office may, in its discretion, accept the report of a certified public accountant.

217.11 Applicants for self-insurance, as a condition precedent to receiving authorization to be a self-insurer, shall give security for the payment of compensation and the discharge of all other obligations under the Act in the amount and form prescribed by the Office.

217.12 The amount of security required by the Office shall be the amount that the Office deems reasonable, necessary, and sufficient to secure performance by the applicant of all obligations imposed upon an employer by the Act. Additions to the amount of security may be required at any time in the discretion of the Office.

217.13 Only surety companies approved by the Treasurer of the District of Columbia may act as sureties on any security for obligations under the Act.

217.14 Applications for self-insurance shall, as a condition precedent to receiving authorization to be a self-insurer, execute and file an undertaking in a manner prescribed by the Office.

217.15 Applicants shall agree in the undertaking to do the following;

(a) To pay when due, as required by the Act, all compensation payable on account

4

of injury or death of any of its employees injured within the purview of the Act;

(b) To furnish where necessary, medical, surgical, hospital and other attendance, treatment, care, and vocational rehabilitation as required by the Act;

(c) To give or deposit with the Office security in the amount and form required by the Office;

(d) To authorize the Office to proceed against, sell or otherwise collect from the security if the employer fails to meet its obligations under the Act;

(e) To timely pay the appropriate share of the cost of administration of the Act; and

(f) To maintain excess insurance coverage or other catastrophic loss security as the Office shall prescribe.

217.16 No initial authorization as a self-insurer shall be granted for a period in excess of twelve (12) months and the expiration date thereof shall fall on the thirtieth (30th) day of September.

217.17 A self-insurer who has made continuing deposit of security as prescribed by the Office and who has filed the appropriate financial and other reports as required by the Office, shall be deemed to have reapplied for self-insurance for the following twelve (12) month period if the employer does not inform the Office to the contrary in writing on or before August 1, preceding the September 30th expiration date.

217.18 The Office may, for good cause shown, suspend or revoke the authorization of any self- insurer.

217.19 The occurrence of any one of the following events shall constitute good cause to suspend or revoke the authorization of a self-insurer:

(a) Failure by a self-insurer to comply with any provision or requirement of the Act or of this chapter or with any lawful order or communication of the Office;

(b) Failure or insolvency of the surety on the indemnity bond; or

(c) Impairment of financial responsibility.

217.20 A self-insurer who desires to terminate the status of a self-insurer and obtain a refund of the deposited security shall file with the Office a sworn statement indicating the following:

(a) All outstanding liabilities for compensation;

(b) All pending claims for compensation;

(c) All accidents that have occurred during the period up to three (3) years prior to the date of the statement; and

(d) Evidence of insurance coverage as required by the Act and § 214 and § 215 of this chapter.

217.21 The Office shall return the deposited security (or the balance thereof) to the employer only after all claims and liabilities have been adjudicated and paid or the Office determines that adequate arrangements for the payment have been made.

DC ST § 32-1503

§ 32-1503. Coverage.

(a) Except as provided in subsections (a-1) through (a-3) of this section, this chapter shall apply to:

(1) The injury or death of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia; and

(2) The injury or death of an employee that occurs outside the District of Columbia if, at the time of the injury or death, the employment is localized principally in the District of Columbia.

(a-1) No employee shall receive compensation under this chapter and at any time receive compensation under the workers' compensation law of any other state for the same injury or death.

(a-2) This chapter shall not apply if the employee injured or killed was a casual employee except that for the purposes of this chapter, casual, occasional, or incidental employment outside of the District of Columbia by a District of Columbia employer of an employee regularly employed by the employer within the District of Columbia shall be construed to be employment within the District of Columbia.

(a-3) An employee and his employer who are not residents of the District of Columbia and whose contract of hire is entered into in another state shall be exempted from the provisions of this chapter while such employee is temporarily or intermittently within the District of Columbia doing work for such nonresident employer, if such employer has furnished workers' compensation insurance coverage under the workers' compensation or similar laws of such other state, so as to cover such employee's employment while in the District of Columbia. The benefits under this chapter or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in the District of Columbia.

(b) Every employer subject to this chapter shall be liable for compensation for injury or death without regard to fault as a cause of the injury or death.

(c) In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment.

(d) Liability for compensation shall not apply where injury to the employee was occasioned solely by his intoxication or by his willful intention to injure or kill himself or another.

(e) Repealed.

DC ST § 32-1504

§ 32-1504. Exclusiveness of liability and remedy.

(a) The liability of an employer prescribed in § 32-1503 shall be exclusive and in place of all liability of such employer to the employee, his legal representative, spouse or domestic partner, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death.

(b) The compensation to which an employee is entitled under this chapter shall constitute the employee's exclusive remedy against the employer, or any collective-bargaining agent of the employer's employees and any employee, officer, director, or agent of such employer, insurer, or collective-bargaining agent (while acting within the scope of his employment) for any illness, injury, or death arising out of and in the course of his employment; provided, that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.

(c) The furnishing of, or failure to furnish, insurance consultation services related to, in connection with or incidental to an applicable policy of insurance shall not subject the insurer, its agent or employees undertaking to perform such services to liability for damages from injury, death or loss occurring as a result of any act of omission in the course of such services.

(d) This section shall not apply:

  (1) If the injury, loss or death occurred during the actual performance of consultation services and was caused by the active negligence of the carrier, its agent or employees which was the proximate cause of the injury, death or loss; or

  (2) To any consultation services required to be performed under the provisions of a written service contract not incidental to an applicable policy of insurance.

DC ST § 32-1515

§ 32-1515. Payment of compensation.

(a) Compensation under this chapter shall be paid periodically, promptly, and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.

(b) The 1st installment of compensation shall become due on the 14th day after the employer has knowledge of the job-related injury or death, on which date all compensation then due shall be paid. Thereafter compensation shall be paid in installments, biweekly, except where the Mayor determines that payment in installments should be made monthly or at some other period.

(c) Upon making the 1st payment and upon suspension of payment for any cause, the employer shall immediately notify the Mayor in accordance with a form prescribed by the Mayor that payment of compensation has begun or has been suspended, as the case may be.

(d) If the employer controverts the right to compensation he shall file with the Mayor, on or before the 14th day after he has knowledge of the alleged injury or death and its relationship to the employment, a notice in accordance with a form prescribed by the Mayor stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death and the grounds upon which the right to compensation is controverted.

(e) If any installment of compensation payable without an award is not paid within 14 days after it becomes due, as provided in subsection (b) of this section, there shall be added to such unpaid installment an amount equal to 10% thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subsection (d) of this section, or unless such nonpayment is excused by the Mayor after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.

(f) If any compensation, payable under the terms of an award, is not paid within 10 days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20% thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in § 32-1522 and an order staying payments has been issued by the Mayor or court. The Mayor may waive payment of the additional compensation after a showing by the employer that owing to conditions over which he had no

10

control such installment could not be paid within the period prescribed for the payment.

(g) Within 16 days after final payment of compensation has been made, the employer shall send to the Mayor a notice, in accordance with a form prescribed by the Mayor, stating that such final payment has been made, the total amount of compensation paid, the name of the employee and of any other person to whom compensation has been paid, the date of the injury or death, and the date to which compensation has been paid. If the employer fails to so notify the Mayor within such time the Mayor shall assess against such employer a civil penalty in the amount of $100.

(h) The Mayor: (1) May upon his own initiative at any time in a case in which payments are being made without an award; and (2) shall in any case where right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice from any person entitled to compensation or from the employer, that the right to compensation is controverted, or where payments of compensation have been stopped or suspended, make such investigations, cause such medical examinations to be made, or hold such hearings, and take such further action as he considers will properly protect the rights of all parties.

(i) Whenever the Mayor deems it advisable he may require any employer to make a deposit with the District of Columbia Treasurer to secure the prompt and convenient payment of such compensation, and payments therefrom upon any awards shall be made upon order of the Mayor.

(j) If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due. All payments prior to an award, to an employee who is injured in the course and scope of his employment, shall be considered advance payments of compensation.

(k) An injured employee, or in case of death his dependents or personal representative, shall give receipts for payment of compensation to the employer paying the same and such employer shall produce the same for inspection by the Mayor, whenever required.

DC ST § 32-1524

§ 32-1524. Modification of awards.

(a) At any time prior to 1 year after the date of the last payment of compensation or at any time prior to 1 year after the rejection of a claim, provided, however, that in the case of a claim filed pursuant to § 32-1508(a)(3)(V) the time period shall be at any time prior to 3 years after the date of the last payment of compensation or at any time prior to 3 years after the rejection of a claim, the Mayor may, upon his own initiative or upon application of a party in interest, order a review of a compensation case pursuant to the procedures provided in § 32-1520 where there is reason to believe that a change of conditions has occurred which raises issues concerning:

(1) The fact or the degree of disability or the amount of compensation payable pursuant thereto; or

(2) The fact of eligibility or the amount of compensation payable pursuant to § 32-1509.

(b) A review ordered pursuant to subsection (a) of this section shall be limited solely to new evidence which directly addresses the alleged change of conditions.

(c) Upon the completion of a review conducted pursuant to subsection (a) of this section, the Mayor shall issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation previously paid, or award compensation. An award increasing or decreasing the compensation rate may be made and shall be effective from the date of the Mayor's order for a review of the compensation case. If, since the date of the Mayor's order for a review of the compensation case, the employer has made any payments of compensation at a rate greater than the rate provided in the new compensation order, the employer shall be entitled to be reimbursed for the difference in accordance with rules promulgated by the Mayor. If, since the date of the Mayor's order for review of the compensation case, the employer has made any payments of compensation at a rate less than the rate provided in the new compensation order, the employee shall be entitled to the difference as additional compensation in accordance with rules promulgated by the Mayor.

(d) A compensation order issued pursuant to subsection (c) of this section shall be reviewable pursuant to § 32-1522.

DC ST § 32-1528

§ 32-1528. Costs in proceedings brought without reasonable grounds; penalty for unreasonable delay in payment of compensation.

(a) If the trier of fact or court having jurisdiction of proceedings in respect of any claim or compensation order determines that the proceedings in respect of such claim or order have been instituted or continued without reasonable ground, the costs of such proceedings shall be assessed against the party who has so instituted or continued such proceedings.

(b) If the Mayor or court determines that an employer or carrier has delayed the payment of any installment of compensation to an employee in bad faith, the employer shall pay to the injured employee, for the duration of the delay, the actual weekly wage of the employee for the period that the employee is eligible to receive workers' compensation benefits under this chapter. The penalty shall be in addition to any amount paid pursuant to § 32-1515.

DC ST § 32-1534

§ 32-1534. Security for payment of compensation.

(a) Every employer shall secure the payment of compensation under this chapter: (1) by insuring and keeping insured the payment of such compensation with any stock company or mutual company or association, or with any person or fund, while such person or fund is authorized: (A) under the laws of the United States, the District of Columbia, or of any state, to insure workers' compensation; and (B) by the Mayor to insure payment of compensation under this chapter; or (2) by furnishing satisfactory proof to the Mayor of his financial ability to pay such compensation and receiving an authorization from the Mayor to pay such compensation directly. The Mayor may, as a condition to such authorization, require such employer to deposit with the District of Columbia Treasurer either an indemnity bond or securities (at the option of the employer) of a kind and in an amount determined by the Mayor, and subject to such conditions as the Mayor may prescribe, which shall include authorization to the Mayor, in case of default, to sell any such securities sufficient to pay compensation awards or to bring suit upon such bonds, to procure prompt payment of compensation under this chapter. Any employer securing compensation in accordance with the provisions of this subsection shall be known as a self-insurer.

(b) In granting authorization to any carrier to insure payment of compensation under this chapter the Mayor may take into consideration the recommendation of any District authority having supervision over carriers. Any carrier so authorized by the Mayor shall maintain a representative in the District of Columbia who can fulfill all of the obligations of the carrier under this chapter and who shall maintain a file of all active claims being serviced by the carrier in the District of Columbia. The Mayor may suspend or revoke the authorization of any carrier to insure payment of compensation under this chapter for good cause shown after a hearing at which the carrier shall be entitled to be heard in person or by counsel and to present evidence. No suspension or revocation shall affect the liability of any carrier already incurred.

14